Allen, Ball & Co. *vs.* Mayor and Aldermen of Savannah.

No. 55.—Allen, Ball & Co. plaintiffs in error, *vs.* The Mayor and Aldermen of the City of Savannah, defendants in error.

[1.] The writ of error is an original writ.

[2.] The object and effect of the writ of error considered.

[3.] The writ of error is in the nature of a new suit. It lies only to a *final* judgment.

[4.] Where a cause is carried up, and the judgment of the Superior Court affirmed, it takes effect from the date of the first judgment.

[5.] Neither by the Common Law, nor the Act organizing the Supreme Court in this State, is a writ of error a *supersedeas* of the execution, unless bond and security is given.

[6.] Judgments in the Circuit Court, which are affirmed, do not lose any lien or priority, by reason of the proceedings in the Supreme Court.

[7.] The pendency of a writ of error does not impair or affect the judgment of the Superior Court. It is binding until reversed, and, when affirmed, is binding, *ab initio.*

[8.] A Statute of the State, declaring of full force all the ordinances of a city or other corporation, "*in operation*" at its date, does not embrace one which has been judicially pronounced by the *Superior* Court to be *inoperative* before its passage.

[9.] The phrase, "*in operation*," defined.

*Certiorari.* Decided by Judge H. R. Jackson, December 20th, 1850.

On 11th November, 1842, the Mayor and Aldermen of the City of Savannah passed an ordinance, imposing a tax upon the gross commissions or income received from sales of goods, professional pursuits, &c. On the 22d November, 1849, another ordinance was passed, " to reduce the taxes of the City of Savannah," which, among other things, reduced " the tax on income 25 per cent." On the 9th of December, 1849, the General Assembly passed an Act which, among other things, provides, " That all and singular the ordinances of said corporation (of Savannah) heretofore passed, and *now in operation*, for the laying or collecting of any tax or assessment, be and they are hereby adopted and confirmed, and declared of full force."

By a declaratory ordinance, passed 13th May, 1850, the income tax was directed to be collected from the date of the passage of the Act, 9th December, 1849.

On the 9th day of June, 1849, in a cause pending between the Mayor, &c. of Savannah and Charles Hartridge, Judge *Fleming*, then presiding in the Superior Court of Chatham County declared the ordinance of 11th November, 1842, illegal and void; which decision, on appeal to the Supreme Court, was affirmed at January Term, 1850.   See 8 *Ga. Reps.* 23.

Allen, Ball & Co. having refused to pay their income tax, assessed as prescribed in the declaratory ordinance of May, 1850, an execution was issued therefor.  To this *fi. fa.* an affidavit of illegality was filed, on the grounds, among others, that the City Council had no power to pass the ordinance assessing a tax on income; that the ordinance of November, 1842, had been declared illegal and void, before the passage of the Act of December, 1849, and was consequently not "now (then) in operation," and that the declaratory ordinance of May, 1850, was retrospective and void.

The City Council having overruled the grounds taken, a writ of *certiorari* was applied for to Judge *Jackson*, presiding in Superior Court.   On argument had, the writ was refused.

And to this decision exceptions were filed, on which error has been assigned.

LAW and BARTOW, for plaintiffs in error.

LLOYD & OWENS and R. H. GRIFFIN, for defendants.

*By the Court.*—LUMPKIN, J. delivering the opinion.

By an ordinance passed the 11th of November, 1842, the Mayor and Aldermen of Savannah imposed a tax of two and a half per cent. on gross income; and on the 22d of November, 1849, they passed another ordinance, reducing the tax on income twenty-five per cent.   On the 13th day of May, 1850, the Mayor and Aldermen passed another ordinance, entitled "An ordinance

declaratory of existing tax ordinances, which is as follows: Whereas, it is understood that doubts exist as to the precise day from which returns are to be made under the ordinance passed the 11th day of November, 1842, imposing a tax upon all gross income derived from commissions, (whether ordinary or guaranty commissions,) charged on purchases or sales of any articles whatever, or procuring and collecting freights, or receiving and forwarding goods; on all money negotiations; on the purchase or sale of stocks, or other evidences of debt or commissions received as executor or executrix, or administrator or administratrix, and also upon the profit or income arising from the pursuit of any faculty, profession or calling, (the clergy and school-masters excepted;) and, whereas, the Legislature at its last session, by an Act duly passed and approved, adopted, confirmed and declared of full force, all and singular the ordinances of this corporation heretofore passed and then in operation, for laying and collecting any tax or assessment—

"Be it therefore ordained by the Mayor and Aldermen of the City of Savannah and the hamlets thereof, in Council assembled, and it is hereby ordained by the authority of the same, that the City Treasurer be, and he is hereby ordered and directed to receive, and all persons liable to said tax are required to make returns under the ordinance aforesaid, and those amendatory thereof, from the day of the passing and approving of the Act aforesaid.

" And be it further ordained, that the City Treasurer issue executions against all defaulters, according to the tax ordinances of the city."

By order of this last ordinance, Allen, Ball & Co. returned commissions on purchases, sales, freight, and other negotiations, from the 8th December, 1849, to the 30th April, 1850, inclusive, $6,381, tax $119 71; and having failed to pay this tax, the Mayor and Aldermen issued an execution for the collection of the same, under which a levy was made, when Allen, Ball & Co. filed their affidavit of illegality, setting forth, among other things, the following grounds:

1st. Because the said execution was issued upon assessment

Allen, Ball & Co. *vs.* Mayor and Aldermen of Savannah.

made upon the return of deponents of their gross income, derived from purchases, sales, freight, negociations and general commercial business, between the 8th December, 1849, and 30th April, 1850, which said return was made by an order of the Mayor and Aldermen of the City of Savannah and the hamlets thereof, which said order was illegal.

2d. Because the corporation of the City of Savannah is not authorized by any law of this State, to levy an assessment upon income, and because the said execution has issued to collect a tax or assessment upon the income of deponents, derived from their personal labor.

3d. Because the ordinances and resolutions, passed by the Mayor and Aldermen of the City of Savannah and the hamlets thereof, under which said assessment has been made and execution issued, are not in conformity with the Act of 24th of December, 1845, nor the tax law of 1804, nor any other law of this State, nor in conformity with the powers conferred upon the corporation of the City of Savannah by the Act of 1849, or by any other Act of the Legislature of the State of Georgia, but, on the contrary, is in violation of said laws.

4th. Because the ordinances of the City of Savannah, which assess a tax upon income, and under which said execution issued and is proceeding, have been declared to be invalid and void by the highest judicial Courts in this State, and because said execution has been issued under said ordinances thus judicially declared to be inoperative.

5th. Because the ordinance of the Mayor and Aldermen of the City of Savannah and the hamlets thereof, passed the 13th of May, 1850, entitled "An Ordinance declaratory of existing Tax Ordinances," and by virtue of which said assessment was made, and the said execution issued, was without authority of law, and levied a retrospective tax upon income which had been received and expended prior to its enactment.

This affidavit of illegality being returned to the Mayor and Aldermen on the 29th August, 1850, the same was overruled by them, and the execution and levy ordered to proceed. Whereupon, Allen, Ball & Co. by their counsel, excepted to the said

order and decision of the Mayor and Aldermen, upon the affidavit of illegality, which exceptions were overruled. Allen, Ball & Co. then presented their petition to the Judge of the Superior Court, in and for the Eastern District, in terms of the law, praying for the writ of *certiorari* upon the specifications of errors complained of in the said decision and order of the Mayor and Aldermen, and, upon the said petition, the Judge made an order that the Mayor and Aldermen should show cause why the prayer of the petitioners should not be granted, and the writ of *certiorari* issued. Upon the 20th December, 1850, the writ was made returnable, and cause shown. Whereupon, the Judge refused to grant the same, and maintained that the 4th section of the Act of the Legislature, approved on the 8th December, 1849, in reference to the City of Savannah, and providing "that all and singular the ordinances of said corporation heretofore passed, *and now in operation,* for the laying and collecting of any tax or assessment, be, and the same are hereby adopted and confirmed, and declared of full force," made the ordinance of 1842, under which this tax was imposed, valid and legal, notwithstanding the same had been pronounced null and void by his predecessor of the Eastern Circuit, on the 9th of June, 1849, which judgment was affirmed by the Supreme Court, in the Term of January, 1850. To which decision, Allen, Ball & Co. by their counsel, Law and Bartow, Charlton & Ward, excepted, and now allege the following grounds of error :

1st. Because the Judge decided that the execution issued against the property of Allen, Ball & Co. for the recovery of the tax assessed upon their income, as heretofore set out, was properly issued, and by authority of law.

2d. Because the Judge decided that the Act of the General Assembly of the State of Georgia, passed the 8th day of December, 1849, gave validity to the ordinance of the Mayor and Aldermen of the City of Savannah, passed the 11th day of November, 1842, entitled "An Ordinance amendatory of, and in addition to the Tax Ordinance of the City of Savannah, for raising supplies for the support of a Watch, and other purposes."

Allen, Ball & Co. *vs.* Mayor and Aldermen of Savannah.

3d. Because the Judge decided that the said ordinance, before recited by its title, was *in operation* at the time of the passing of the Act of the General Assembly, of the 8th day of December, 1849, when, in fact, the said ordinance, so far as it related to the tax therein imposed upon income, had been declared to be inoperative and void by the Judge of the Superior Court of the Eastern District, in the Term of May, 1849, which judgment was affirmed by the Supreme Court, in the Term of January, 1850.

4th. Because the Judge erred in the construction he gave to the 4th section of the Act passed by the General Assembly, on the 8th of December, 1849, which enacted "that all, and singular the ordinances of said corporation, (of Savannah,) heretofore passed, and now in operation for the laying and collecting of tax or assessment, be, and they are hereby adopted and confirmed, and declared of full force," by applying the said section to the tax ordinance referred to, when the same was not in operation in law or in fact.

5th. Because the Judge erred in deciding "that the only ordinances of the City of Savannah, of the character referred to, which were not either obsolete or repealed at the date of the Act, were the ordinances of the 11th of November, 1842, and of the 22d of November, 1849, the latter being a re-enactment of the former, with a reduction of the rates of taxation," when, in fact, there were other ordinances " of the character referred to," and the ordinance of the 22d of November, 1849, was not a re-enactment of the ordinance of the 11th of November, 1842, but only an amendment thereto.

6th. Because the Judge erred in deciding " that a legislative Act, when passed directly by the Legislature, or indirectly by their authority, must be considered as in operation, until repealed or pronounced unconstitutional or illegal by the Supreme Court of the State." Whereas, the ordinance in question had been declared to be inoperative by a Court of superior and competent jurisdiction, in a case in which its validity had been directly in issue, which judgment remained of full force, until reversed by a supreme tribunal, or overruled by its own authority, and which

judgment was subsequently affirmed by the Supreme Court, and was, therefore, of force and binding from the time when it was made by the said Superior Court.

7th. Because the Judge erred in his construction of the Act of the Legislature of December 9th, 1849, by calling, in aid of said construction, extrinsic facts and circumstancs not mentioned or alluded to in the Act itself, and by explaining the legislative intent outside of the terms of the Act.

Judge Jackson deemed it unnecessary for him to consider whether the last ordinance, of May, 1850, could or could not retroact, so as to authorize the issuing and levy of this tax execution; for the reason, I suppose, that he viewed this as a proceeding under the previous ordinances of 1842 and 1849. Such it purported to be, and undoubtedly is. Indeed, this last ordinance did not profess *to levy* a tax, but was *directory*, merely, as to the mode of giving in and receiving the income tax, under existing ordinances. And the whole question, in this case, turns upon a single point: Did the fourth section of the Act of 1849 give validity to the income ordinances then upon the statute book of the corporation of the City of Savannah? And the answer to this inquiry depends upon the settlement of this principle. Does a Statute of the State, giving vitality to all the tax ordinances of a city " *in operation*," apply to one which has been judicially declared by the *Superior* Court to be *inoperative* before its passage? The ordinance of 1842, having been decided by Judge Fleming, at the May Term, 1849, of Chatham Superior Court *inoperative*, which judgment was affirmed by the Supreme Court, upon writ of error, the January ensuing, was this ordinance embraced by the Act of the Assembly of the 8th December, 1849, " adopting, enforcing and declaring of full force, all and singular the ordinances of the corporation of Savannah then *in operation?*" To determine this point properly, it becomes necessary to ascertain the effect and operation of a writ of error, in relation to the judgment rendered in the Circuit Court.

[1.] The writ of error is an original writ. In England it is issued out of a Court of competent jurisdiction, directed to the

Judges of a Court of record, in which *final* judgment has been given, and commanding them, in some cases, themselves to examine the record; in others, to send it to another Court of appellate jurisdiction, therein named, to be examined, in order that some alleged error in the proceedings may be corrected. *Steph. Pl.* 138.   1 *Cowen,* 18, 19.   3 *Hammond,* 354.

[2.] The object of the writ of error is to review and correct an error of the law, which is not amendable at Common Law, or cured by any of the Statute of jeofails. *Tidd's Pr. ch.* 43. *Graham's Pr. B.* 4, e.   1 *Bac. Abr. Error in pr.*   1 *Vern.* 169. *Yelv.* 76.   1 *Salk.* 322.   2 *Saund.* 46. *n.* 6.   *Ibid,* 101, *n.* 1. 3 *Bl. Com.* 405.   *Serg. Const. Law, ch.* 5.

[3.] It is considered a new suit, and it is less an action between the original parties than a question between the judgment and the law.   It is not the action which is to be judged, but the judgment.   7 *Durnf. & East,* 337.   6 *Port. Rep.* 9.   3 *Story's Const. Law.* §1721.   2 *Sand.* 101, *f.*

Writs of error are, upon *final,* as contrasted with *interlocutory* judgments, meaning, by the words final judgment, one which determines the particular cause.   1 *Wend.* 35.   4 *Cowen,* 82.   6 *Johns.* 337.   2 *Mass.* 142.   3 *Binney,* 531.   9 *Pierce,* 606.   3 *T. R.* 78.   2 *Salk.* 504.   4 *Rawle,* 355.   2 *Peters,* 464, 465.   5 *Conn. Rep.* 356, 357.   *Tillinghast & Yates' Treatise on Error and Appeals, passim.*

[4.] The inference to be drawn from these authorities is, that the judgment of the Court below is considered, at Common Law, *a final judgment,* and the object of the new proceeding by writ of error, is to test this judgment by the law, the result being, on such an examination, either its affirmance or reversal.

[5.] By the Act of 1845, as well as by the Common Law, a writ of error is no *supersedeas* of execution, unless bond and security is given.   The first judgment is treated, to all intents and purposes, as a final judgment.   Indeed, if it be sustained, none other is awarded.

[6.] And the Statute expressly provides that judgment in the Court below, if affirmed, shall not lose any lien or priority by

reason of the proceedings in the Court above. *Pamphlet Laws,* 1845, *p.* 21.

[7.] Our conclusion, therefore, is that the pendency of the writ of error did not affect the judgment of the Superior Court declaring void the ordinance of 1842, imposing a tax upon income. It was binding until reversed, and being affirmed, it was binding, *ab initio.* The only effect of the judgment of the Supreme Court, in January, 1850, was the judicial ascertainment of the fact, from an examination of the record, that the ordinance of November, 1842, was always a nullity, so far as in income tax was concerned, the corporation possessing no authority to impose it, and of course was inoperative, on the 8th of December, 1849, when the Act of the Legislature was passed.

[8.] Had the judgment of affirmance of the Supreme Court been pronounced *prior* to the legislative enactment, there would be no doubt or controversy. The effect is just the same, whether made in October, before the Act was passed, or in January, afterwards. It relates back, and takes effect from the date of the first judgment in the spring of 1849.

[9.] What is the meaning of the phrase, " *in operation,*" used by the Assembly? According to Webster, and the best lexicographers, *operation* is defined to be the exertion of power, physical, mechanical or moral—action, as of an army or fleet—movement of machinery. Can an ordinance, which had been pronounced a nullity by a Court of competent jurisdiction, six months previously, and the proceedings under it set aside as illegal, be said to be " *in operation,*" viz : working for the corporation? Instead of being in progress, its motion was completely arrested, *never to be again revived.*

What purpose those who framed this Act may have designed to subserve, we do not pretend to know. Gathering the intention of the Legislature from the language of the Statute, we are of the opinion that the ordinance of 11th of November, 1842, was not " *in operation*" at the time of the passing of the Act of December 8th, 1849, and was, therefore, not embraced by the terms of the 4th section of that Statute.

Whether the 3d section of this Act confers power to impose an income tax, it is unnecessary to decide. It vests the Mayor and Aldermen " with full power and authority to make such assessments, and levy such taxes on the inhabitants of Savannah, or those who have taxable property within the same, for the safety, benefit, convenience and .advantage of the city, as shall appear to them expedient." All I can say is, that this grant is exceedingly broad.

Let the judgment be reversed.