**SCHUMACHER, Plaintiff-Appellant, v. SMITH et,
Defendants-Appellees.**

Ohio Appeals, Seventh District, Monroe County.

No. 328.   Decided January 16, 1950.

Matz & Matz, Woodsfield, for plaintiff-appellant.
Moore & Moore, Woodsfield, for defendants-appellees.

## OPINION

By PHILLIPS, PJ.

Plaintiff is the owner in fee simple, and, by a series of assignments, defendants on May 25, 1945, became the assignees of leases to nine oil and gas producing wells on two parcels of land, of which defendants are now in possession, situated in Monroe County, Ohio, containing 51 and 80 acres respectively, which plaintiff's predecessors in title leased originally on April 22, 1905, and June 29, 1905, and on which lands since those dates gas and oil wells situated thereon have been in continuous operation.

The original three year lease provided, among other things, that during that period of time, and as long thereafter as oil and gas was produced, lessees, their heirs and assigns, should deliver to lessors, their heirs and assigns, in pipe lines one eighth of all oil produced thereon, and pay the owners $200.00 per annum for each gas well from which gas was

marketed; and that lessees were to have sufficient fuel gas to operate such leases, and lessors sufficient gas for domestic purposes.

Plaintiff sued defendants in the court of common pleas for $2400.00, the alleged amount due at $200.00 per annum for gas produced on four wells for the three years since they acquired such leases; and by supplemental petition sought a judgment for an additional $800.00 gas rental allegedly due for another year.

The jury returned a verdict for the defendants, upon which the trial judge subsequently duly entered judgment. Plaintiff appealed from that judgment to this court on questions of law.

The owners of the land never received, and never made claim for, any compensation for gas produced by any well during the existence of such lease, although they were in possession of all facts relative to the operation of the wells during the existence of such lease that the operators thereof possessed.

There is evidence, properly admitted, that during the time defendants operated the wells, which were the subject of litigation in the trial court, which is the only time in which we are interested in this appeal, that for a period of many years such wells could be, and now are being, operated on a financially successful basis as oil wells only by shackling them with other wells, all totaling forty-eight wells, which is, and was, the common practice in Monroe County, and which practice was used by their assignors; that the gas they produced, none of which was marketed, was commingled in a common line with gas from other wells owned and operated by defendants, which is used for the operation of all such wells, including plaintiff's, and for heating and lighting buildings, other than those of the plaintiff situated on the leased lands; that defendants' wells other than those which were the subject of litigation in the trial court produced as much or more gas as such wells did.

On the question of custom this court in the case of **Weisant v. Follett, 17 Oh Ap 371,** said:—

"When the term of a lease was to continue 'as long as oil may be found in paying quantities,' and the shackling of a large number of wells together, located on different lease-holds, operated by a single power plant, was in general use in the vicinity at the time of the making of the lease, it may be presumed that the parties contemplated such use and test, and their rights may be so determined."

In that case, speaking for the court, Judge Roberts said: "The plaintiff lived upon the leased land and saw the lessee and the succeeding owners install and continue in operation this method of pumping, without complaint," as did the appellant in this appeal until he sued defendants in the court of common pleas.

This court followed the reasoning of Judge Roberts in the unreported Monroe County case of Woodsfield Building and Loan Company, a corporation, appellant, v. George M. Thornberry, William H. Pickens, O. Lucas, and Alonzo Bartenschlag.

It is the duty of counsel for plaintiff to direct the attention of this court by oral argument, or brief, to the specific evidence they claim was admitted to defendants' prejudice. However, in this case we have read the reasonably lengthy bill of exceptions, and carefully noted all objections made "by counsel for plaintiff," and we find no error prejudicial to plaintiff, as he urges, in the admission of evidence of custom and common practice in the operation of oil and gas wells in Monroe County.

In his second assigned ground of error plaintiff contends that the trial judge erred to his prejudice in refusing to charge the jury in writing before argument that:—

"2. A 'custom' as applied to usage which is embodied in a contract is something which has the force and effect of law by usage and consent of the people, and it must be uniform and universal within its sphere of action and so ancient that the memory of man runneth not to the contrary. (Swan v. Churchill, 155 Ill. App. 505.)

"3. You are instructed that loose, variable custom or discretionary practice does not rise to the dignity of a 'custom' so as to control interests of parties to a contract if usage leaves some material element to right of exercising options or decisions of one of the parties. (Martin v. State Highway Board, 180 S. E. 614, 616; 50 Ga. App. 856; King v. Shelton, 252 S. W. 194, 195.)"

Without further word under the evidence in this case, which has been read and studied carefully, we conclude that the trial judge did not err to plaintiff's prejudice in refusing to so charge the jury.

The judgment of the court of common pleas is affirmed.

NICHOLS, J, BUCKLEY, J, concurs in judgment.